IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

SPYDERCO, INC.,
a Colorado corporation,

       Plaintiff,

v.

KEVIN, INC., d/b/a SHAWMUT DISTRIBUTORS,
d/b/a KITTERY TRADING POST, and
d/b/a KTP GUN EXCHANGE,
a Maine corporation,

       Defendant.

---

## COMPLAINT WITH JURY DEMAND

---

Plaintiff Spyderco, Inc. ("Spyderco") files this Complaint against Defendant Kevin, Inc. ("Kevin"), d/b/a Shawmut Distributors ("SD"), d/b/a Kittery Trading Post ("KTP"), and d/b/a KTP Gun Exchange ("KTPGE"), alleging as follows:

## I.      THE PARTIES

1.      Spyderco is a Colorado corporation, having its principal place of business at 820 Spyderco Way, Golden, Colorado 80403.

2.      Upon information and belief, Kevin is a Maine corporation in good standing that owns and operates retail stores and affiliated businesses. The President and a Director of Kevin is Kevin F. Adams. Kevin's current corporate Treasurer is David Labbe. Adams and Labbe both office at 301 U.S. Route 1, Kittery, Maine 03904, P.O. Box 904, Kittery, Maine 03904.

3.      Kevin is subject to process by serving its Registered Agent, Philip H. Gleason, who is located at Bernstein Shur, Sawyer & Nelson, P.A., 100 Middle Street, West Tower, Portland, Maine 04104.  Kevin is also subject to process by serving either Adams or Labbe at their business office.

4.      KTP is an assumed name of Kevin.  (*See* Ex. A, incorporated herein by this reference).  Through KTP, Kevin operates a brick and mortar store in Kittery, Maine and an interactive website that sells sporting goods nationally and internationally.  That website has a domain of www.kitterytradingpost.com, is owned by Kevin through KTP, was first established in 1996, was last updated in 2015, and lists Labbe as site administrator.  Information listed on the website and its interactive functionality is incorporated herein by this reference.

5.      KTPGE is an assumed name of Kevin.  (*See* Ex. B, which is incorporated herein by this reference).  Kevin operates KTPGE to buy and sell used guns nationally through use of an interactive website.  That website has a domain of www.ktpguns.com, is owned by Kevin through KTP, was first established in 1998, was last updated in 2015, and lists Labbe as site administrator.  Information listed on the website and its interoperability functionality is incorporated herein by this reference.

6.      SD is an assumed name of Kevin.  (Ex. C, incorporated herein by this reference.)  Kevin operates SD to purchase products to be sold by KTP and KTPGE and for perhaps other of its business units.

## II.      JURISDICTION AND VENUE

7.      This is an action arising from Kevin's willful counterfeiting of Spyderco's federally registered trademarks, willful infringement of Spyderco's federally registered and common-law

trademarks, violation of the Colorado Consumer Protection Act ("C.C.P.A."), civil conspiracy, misappropriation of business values, commercial disparagement and punitive damages under Colorado Statutory law.

8.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  The Court has supplemental jurisdiction over Spyderco's state law claims under 28 U.S.C. § 1367, as they are so related to the federal claims that they form part of the same case or controversy.

9.     Kevin has general minimum contacts with this judicial district by transacting business within Colorado, including by purchasing knives from Spyderco for resale, and through operation of the interactive www.kitterytradingpost.com and www.ktpguns.com websites, which upon information and belief, have resulted in numerous commercial transactions with others in addition to Spyderco, who reside in Colorado.  Further, Kevin's knowing and blatant sale of counterfeit Spyderco knives caused Kevin to reasonably anticipate being subject to jurisdiction in Spyderco's domicile state, Colorado.  Personal jurisdiction exists over Kevin.

10.     Venue over this action is proper in this Court under 28 U.S.C. §§ 1391(b) and (c).

## III.     GENERAL ALLEGATIONS

### A.     Spyderco's Intellectual Property

11.     Spyderco is engaged in the business of, among other things, designing, developing, manufacturing and distributing knives and knife accessories.  Many of these products are manufactured at Spyderco's Golden, Colorado facility, and all its business operations occur out of that facility.  Spyderco and its products are recognized by the knife industry as being among the

very best in quality and distinctiveness in the world.  (*See* Ex. D, which is incorporated herein by this reference.)  Spyderco's business and product reputation are its most prized business assets.

12.     One of Spyderco's most recognized and iconic knives is known as the Military and that product name is included on packaging and marketing collateral for the product.  Information about that product is listed on Spyderco's website at https://www.spyderco.com/catalog/details.php?product=19, and that information is incorporated herein by this reference.  These knives come in a variety of styles and have been sold for more than a decade.  Relevant information about the knife and its selling price is set forth below:



Spyderco Military Camo

MSRP $259.95



click to enlarge

**Please Select:**

[ Add To Cart ]   [ View Cart ]

◉ Military Digital Camouflage G-10 PlainEdge-PlainEdge

| | | | | | |
|---|---|---|---|---|---|
| **Overall Length** | 9.5" (241 mm) | **Blade Length** | 4" (102 mm) | **Steel** | CPM S30V |
| **Closed Length** | 5.5" (140 mm) | **Edge Length** | 3.687" (94 mm) | **Weight** | 4.5 oz (128 g) |
| **Blade Thickness** | .145" (3.7 mm) | **Handle** | G-10 | | |

**Spyderco Military Camo**

Digital Camouflage is the outcome of applying engineering psychology with the study of visual biophysics and human visual performance.The pattern is made up of small micropatterns, optically reducing the eye's ability to detect and discern what it covers.Various digital patterns are developed and used for the U.S. Military to make more effective concealment for the men and women who go in harms way to protect our freedom.

A cornerstone model in Spyderco's Save and Serve line up is the C36 Military Model meeting the requirements of a high-performance, light-weight folder designed for hard use. Since the steel is the spirit of the knife, CPM S30V seemed the logical choice for the blade given its reputation for long-term edge retention and rust resistance. The 'Millie' has a modified clip-point blade laser cut with a 14 mm Spyderco Round Hole for quick deployment and for use with gloves. Texturing above the hole hold the thumb in contact with the blade's spine during cutting for confident control over the sharpened edge. The handle scales are Digital Camouflage G-10 with the lock's liner nested (inlayed) directly into the scale, pumping up lock strength without the addition of bulky liners. Spacers between the scales create a gap running the handle's full length exposing the inside workings for inspection and cleaning. The handle flares slightly at the front end creating a finger choil and at the butt end, which keeps the knife from slipping forward or backward in the hand while sawing or making tough or aggressive cuts. A contoured black metal clip is set for right-hand tip-down carry.

Please note that the digital pattern will vary on each knife and that no two knives (or sides of each knife) will be the same.

**Related Items**

Spyderco Military ~ C36G

Spyderco Military Black Blade ~ C36GBK

Spyderco Military Camo Black Blade ~ C36GCMOBK







Spyderco Para Military 2 ~ C81G2

Spyderco Para Military 2 Camo G-10 ~ C81GCMO2

Spyderco Para Military 2 Camo G-10 Black Blade ~ C81GCMOBK2



13.     A second very popular knife sold by Spyderco is known as the Para-Military and that product name is included on packaging and marketing collateral for the product.  Information about that knife is listed on Spyderco's website at https://www.spyderco.com/search/index.php, and that information is incorporated herein by this reference.  The knife also comes in a variety of models and has been sold for more than a decade. Relevant information about the knife is reproduced below:

Spyderco Para Military 2 Camo G-10 Black Blade

MSRP $224.95



click to enlarge

**Please Select:**

◉ Para Military 2 Digital Camouflage G-10 Black Blade-
PlainEdge

[Add To Cart]  [View Cart]

**Overall Length**  8.281 " (210 mm) **Blade Length** 3.438 " (87 mm) **Steel**   CPM S30V
**Closed Length**   4.812 " (122 mm) **Edge Length**  3.078 " (78 mm) **Weight** 3.9 oz. (111 g)
**Blade Thickness** .141 " (3.5 mm)   **Handle**      G-10

### Spyderco Para Military 2 Digital Camouflage Black Blade

The Spyderco Para Military 2 Digital Camouflage Black Blade G-10 has several changes over the classic version. The G-10 handle is narrowed at the end improving the ergonomics. It features a Compression Lock and an ambidextrous-friendly four way clip which carries tip-up/tip-down, left/right-hand and rests deeper in a pocket.

We kept the same high-performance CPM S30V full flat-ground blade but made its profile thinner; removing angles that could catch on a pocket or clothing during deployment. We also lengthened the blade's tip and added additional surface jimping to both the spine and finger choil. Implementation of a new Bushing Pivot System generates fluid action and more consistent manufacturing tolerances.

Refinements to overall construction may not be drastic or even visible to the eye but from the G-10 textured handle to the CPM S30V steel full flat blade, everything is sharper, smoother and guaranteed to provide performance and user comfort.

Made in Golden, Colorado U.S.A.

**Related Items**

Spyderco Para Military 2 ~ C81G2

Spyderco Para Military 2 Camo G-10 ~ C81GCMO2

Spyderco Native 5 G-10 ~ C41G5

Manix™ 2 G-10 Black ~ C101G2

Spyderco Military Black Blade ~ C36GBK

7

14.     Most, but not all,  Military and Para-Military knives are specially manufactured with high quality Crucible CPM S30V steel (and the quality of this steel is touted as important on the  Spyderco  website,  at  www.spyderco.com/cataloglist.php?blade=cmp%20S30V).     That specific steel is often used as it has qualities prized by military, first responders and others who find themselves in situations that require constant critical use of cutting tools.  In order that these professionals can know that their cutting tool is made of the highest quality steel and they can be confident they are entering an uncertain field with a needed tool, Spyderco marks the blade of all authentic Spyderco Military and Para-Military knives that are made with CPM S30V steel with the designation "CPM S30V."

15.     Spyderco also, for some years, has marked and continued to mark each authentic Military and Para-Military knife with the location of its manufacture, "Golden, CO, USA, Earth."

16.     The  manufacturer's  suggested  retail  price  ("MSRP")  for  authentic  Spyderco Military branded knives is between $259.95 and $279.95, and the MSRP for an authentic Para-Military branded knife is between $204.95 and $224.95.

B.     **Spyderco' s Relevant Federally Registered Trademarks**

17.     Spyderco is the owner of now incontestable U.S. Trademark Registration Number 1,965,458 in International Class 8 (U.S. Classes 23, 28 and 44) for folding knives (the "Spyderco Mark").  A true and accurate copy of the Spyderco Mark registration is attached hereto as Ex. E, which is incorporated herein by this reference.  Based upon Spyderco's continuous non-interrupted use of that trademark for years in interstate commerce, relevant consumers have come to associate it exclusively with Spyderco, who thus also acquired strong common law trademark rights in and

to the Spyderco Mark long before Kevin, who without authorization, used the identical mark on visually identical knives.

18.     Spyderco is also the owner of now incontestable U.S. Trademark Registration Number 1,957,810 in International Class 8 (U.S. Classes 23, 28 and 44) for knives (the "Bug Mark").  A true and accurate copy of the Bug Mark registration is attached hereto as Ex. F, which is incorporated herein by this reference.  Based upon Spyderco's continuous non-interrupted use of that trademark for years in interstate commerce, relevant consumers have come to associate it exclusively with Spyderco, who thus acquired strong common law trademark rights in and to the Bug Mark long before Kevin, who without authorization, used the identical mark on visually identical knives.

19.     Spyderco is the owner of now incontestable U.S. Trademark Registration Number 2,033,317 in International Class 8 (U.S. Classes 23, 28 and 44) for folding knives (the "Round Hole Mark").  A true and accurate copy of the Round Hole Mark registration is attached hereto as Ex. G, which is incorporated herein by this reference.  Based upon Spyderco's continuous non-interrupted use of that trademark for years in interstate commerce, relevant consumers have come to associate it exclusively with Spyderco, who thus acquired strong common law trademark rights in and to the Round Hole Mark long before Kevin, who without authorization, used the identical mark on visually identical knives.

20.     The Spyderco Mark, the Bug Mark and the Round Hole Mark will collectively be referred to below as the "MARKS."

C.      **Spyderco' s Relevant Common Law Trademarks**

21.     Spyderco has marketed and sold a variety of unique folding knife products for at least a decade under and in connection with the trademark MILITARY.  These knives have met with significant commercial success and consumer recognition.  Because of this success and years of superior product development and customer service, Spyderco has developed substantial significant consumer recognition, trust, loyalty and goodwill in and to its successful MILITARY trademark.  Based upon Spyderco's continuous non-interrupted use of that designation for more than a decade in interstate commerce, relevant consumers have come to associate it exclusively with Spyderco, who acquired strong common law trademark rights in and to MILITARY long before Kevin, who without authorization, used the identical mark on visually identical knives.

22.     Spyderco has marketed and sold a variety of unique folding knife products since for at least a decade under and in connection with the designation PARA-MILITARY.  These knives have met with commercial success and consumer recognition.  Because of this success and years of superior product development and customer service, Spyderco has developed substantial significant consumer recognition, trust, loyalty and goodwill in and to its successful PARA-MILITARY brand.  Based upon Spyderco's continuous non-interrupted use of that brand for more than a decade in interstate commerce, relevant consumers have come to associate it exclusively with Spyderco, who has thus acquired strong common law trademark rights in and to PARA-MILITARY long before Kevin, who without authorization, used the identical mark on visually identical knives.

23.     Spyderco has marketed and sold a variety of unique folding knife products for several years under and in connection with the symbol .  These knives have met with

commercial success and consumer recognition.  Because of this success and years of superior product development and customer service, Spyderco has developed substantial significant consumer recognition, trust, loyalty and goodwill in and to its successful  symbol.  Based upon Spyderco's continuous non-interrupted use of that symbol for years in interstate commerce, relevant consumers have come to associate it exclusively with Spyderco, who thus acquired strong common law trademark rights in and to the  long before Kevin, who without authorization, used the identical mark on visually identical knives.

24.     Spyderco has marketed and sold a variety of unique folding knife products for years under and in connection with the symbol  .  These knives have met with commercial success and consumer recognition.  Because of this success and years of superior product development and customer service, Spyderco has developed substantial significant consumer recognition, trust, loyalty and goodwill in and to its successful  symbol.  Based upon Spyderco's continuous non-interrupted use of that symbol for more than a decade in interstate commerce, relevant consumers have come to associate it exclusively with Spyderco.  Spyderco has thus acquired strong common law trademark rights in and to the  long before Kevin, who without authorization, used the identical mark on visually identical knives.

25.     The trademarks discussed in paragraphs 21-25 hereof will collectively be referred to below as the "Common-Law Trademarks."

D.      **Kevin and its Infringing Conduct**

26.      Kevin owns several divisions that operate under the assumed names KTP and KTPGE, divisions that buy and sell sporting goods nationally.  Included within products purchased for resale by Kevin are tens of thousands of dollars' worth of knives from Spyderco, including Military and Para-Military knives.  Kevin is a family business owned by the Adams family and, upon information and belief, generates more than $75,000,000 in revenues and $25,000,000 in pre-tax profits annually.

27.      Kevin operates a computerized point of sale cash register system ("POS") at its Kittery, Maine brick and mortar retail store.  Customers from all over the northeast United States stop and visit the store as they are traveling to and from ME, as the store is literally on the boarder of NH, MA and ME.  For that system to operate properly, Kevin assigns unique stock keeping unit ("SKU") numbers to each unique product Kevin authorizes to be sold through the store.  Those SKU numbers must also specifically be correlated to specific products and to the price to be charged for the product.

28.      Kevin acquired some yet unknown quantity of knives that were listed by Kevin its POS system as SKU 1027857, which sells for $75, and 1022957, which sells for $80.  (*See* redacted cash register receipt dated 10/16/16 attached as Ex. H, which is incorporated herein by this reference.)  These knives were sold by Kevin through its brick and mortar store without a box, being provided to the purchasing customer in a brown paper bag marked with KITTERY TRADING POST.  (*See* bag provided with 10/16/16 purchase of knives attached as Ex. I, which is incorporated herein by this reference.)  The two purchased knives include a price tag stating CLONE/PARAMILITARY and CLONE MILITARY:



(*See* Ex. J, which is incorporated herein by this reference.)

29.     Based upon the sales price and other indicia, Spyderco believed that the knives purchased at Kevin's store were not authentic, as authentic Spyderco Para-Military and Military knives, which correspond to the CLONE/PARAMILITARY and CLONE MILITARY knives and offered by Kevin for $75 and $80 a unit, respectively, have a Spyderco MSRP of $224.95 and $259.95, respectively.  To confirm that the knives purchased from Kevin's store were not authentic, Spyderco had an independent metallurgist test the blade of each to determine if they were, as indicated on the knife blades, made of CPM S30V steel. (*See* Ex. K, Declaration of Josh Belt, incorporated by reference herein.)  The results of that testing confirmed that the knives advertised and sold by Kevin were not manufactured by Spyderco in Golden, Colorado and are not authentic.

30.     The knives being offered for sale by and being sold by Kevin as Spyderco knives are made of inferior materials and have an inferior build quality.   These knives will not perform

as advertised (*i.e.* the blades are not made of CPM S30V steel) and will fail in use much more quickly than an authentic Spyderco Military or Para-Military knife that has a blade made of CPM S30V steel.  When they fail early and/or do not perform as expected, the original purchaser and/or a subsequent purchaser, another acquirer or just a person viewing unflattering use of the knives, will think less of Spyderco and the quality of Spyderco products.  Spyderco's reputation is a prized business asset, and the reputational loss visited upon Spyderco by Kevin's sale of the knives, which is completely out of Spyderco's control, could result in significant reputational damage to Spyderco, its brand and its products.

31.     35 U.S.C. §1116 (d)(1)(B)(i) & (ii) defines a counterfeit designation as any symbol used on a good sold in interstate commerce that is identical to or substantially indistinguishable from a symbol that is registered on the Principle Register of the United States.  Knowledge of the registration is irrelevant.   The <u>American College Dictionary of the English Language</u>, ©2000, similarly defines "counterfeit" as "to make a copy of, usually with the intent to defraud," and relevantly defines "clone" as "one that copies or closely resembles another, as in appearance or function."   (*See* Ex. L, which is incorporated herein by this reference.) The CLONE/ PARAMILITARY KNIFE and CLONE/MILITARY KNIFE sold by Kevin include the identical SPYDERCO MARK, BUG MARK, and ROUND HOLE MARK, all of which are Registered on the Principle Trademark Register of the United States.  Kevin's unauthorized advertisement, offer for sale and sale of those knives thus constitutes distribution in interstate commerce of counterfeit goods under 15 U.S.C. § 1117(c).  Those knives will hereafter be referred to as the "Counterfeit Knives."

32.     The Counterfeit Knives have been offered for sale and sold since at least between September 2016 and November 2016 and look identical to authentic Spyderco Military and Para-Military knives, but they were not manufactured or distributed by Spyderco.  Rather, and upon information and belief, the Counterfeit Knives, and more like them, were likely acquired by Kevin from a Chinese distributer for approximately $10 per unit.  If that acquisition price is accurate, Kevin has been and is continuing to generate an obscene (approximately 800%) profit from its illegal and unauthorized sale of the Counterfeit Knives.  The only reason Kevin can generate this obscene profit is because Spyderco spent decades generating a strong product offering, demand for its high quality goods and a near-cult following for its Military and Para-Military knives.  Kevin is free riding on Spyderco's corporate and product reputations to generate unbridled corporate gain and is undercutting the MSRP of authentic Spyderco Military and Para-Military knives by approximately 300% to achieve its goal.

33.     Under 15 U.S.C. § 1117(c), Kevin's advertising, offer for sale and sale of the Counterfeit Knives is willful.  Kevin specifically chose to use the term "CLONE" when deciding how to mark the knives and in deciding how those knives would be represented in its official POS system and on its register tapes.  That term is commonly defined as "one that copies or closely resembles another, as in appearance or function."  Kevin was thus aware of exactly what it was doing when it chose to offer for sale through its store the Counterfeit Knives.  In short, Kevin knowingly and wantonly chose to offer and sell the Counterfeit Knives and to damage, perhaps irreparably, Spyderco's superior, perendinate and valuable reputational rights reflected in the MARKS and the Common-Law Trademarks.

34.     Kevin's willful counterfeiting and infringement make this an exceptional case, entitling Spyderco to: (1) an award of treble actual damages in the form of Spyderco's lost profits and Kevin's gross profits due to infringement of Spyderco's  Common-Law Trademarks under 15 U.S.C. § 1117(a); (2) an award of attorney's fees and costs (including expert costs) under 15 U.S.C. § 1117(a) for infringement of Spyderco's MARKS and Common-Law Trademarks; (3) an award of compensatory damages to cover a national corrective advertising campaign that Spyderco must undertake to advise the purchasing public about the hazards of acquiring a counterfeit Military or Para-Military knife, under 15 U.S.C. § 1117(a); (4) an award of prejudgment and post judgement interest under 15 U.S.C. § 1117(a) and (b) for infringement of Spyderco's federally registered and Common-Law Trademarks; and, perhaps most significantly, (5) an award from this Court of statutory damages for willful counterfeiting under 15 U.S.C. § 1117(c)(2) of not less than $600,000 or more than $2,000,000 per counterfeited mark (3 in total), or a total award of statutory damages of not less than $600,000 or more than $6,000,000 in statutory damages.

35.     The Counterfeit Knives also include on each of their blades "Golden, CO, USA, Earth" and "CPM S30V," indicating to reasonable consumers that the products were manufactured in Golden, Colorado and that the blade was made of CPM S30V steel.  These markings are literally false and a willful fraud upon both Spyderco and the consuming public.  Sale of the Counterfeit Knives with the false product ingredient and location of manufacture markings cause special/actual damages, and reputational damages.  The reputation damages have been delineated above.  The actual (special) damages flow from a loss of product sales and profits that would typically flow from sales of authentic products.  For instance, in this case, Kevin has purchased for resale from Spyderco authentic Spyderco Military and Para-Military knives, but is currently selling through

its retail store the Counterfeit Knives that are identical in appearance to the Counterfeit Knives. Had Kevin not carried in its store the Counterfeit Knives, but instead carried authentic knives made of quality steel in Colorado, customers who wanted knives that looked like and were marked to indicate they were or were as good as authentic Spyderco knives would have purchased the authentic Spyderco knives and Spyderco would have generated its usual profit.  That has not occurred, causing actual damage to Spyderco.

## IV.   FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement of all Marks
### Trademark Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

36.     Spyderco incorporates paragraphs 1 through 35 as though fully set forth herein.

37.     Without Spyderco's consent, Kevin has used, on and in connection with the sale, offering for sale, distribution and advertising of its Counterfeit Knives Spyderco's MARKS and Common-Law Trademarks.

38.     These acts constitute trademark infringement and have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1125(a).

39.     As a direct and proximate result of Kevin's infringing activities, Spyderco is entitled to recover Kevin's unlawful profits and Spyderco's damages under 15 U.S.C. § 1117(a).

40.     Kevin's infringement of Spyderco's MARKS and Common-Law Trademarks is exceptional and intentional, entitling Spyderco to treble the amount of its damages and Kevin's profits, and to an award of attorneys' fees and costs under 15 U.S.C. § 1117(a).

41.     Spyderco is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## V.      SECOND CLAIM FOR RELIEF
### (Willful Federal Counterfeiting, § 35 (a) & (c)
### of the Lanham Act, 15 U.S.C. § 1117 (a) & (c))

42.      Spyderco incorporates paragraphs 1 through 41 as though fully set forth herein.

43.      Without Spyderco's consent, Kevin has used, on and in connection with the sale, offering for sale, distribution and advertising of its Counterfeit Knives designations that are identical to Spyderco's MARKS.

44.      These acts constitute willful trademark counterfeiting in violation of 15 U.S.C. § 1117 (a) and (c).

45.      As a direct and proximate result of Kevin's activities, Spyderco is entitled to recover, among other things, at least $600,000 in statutory damages under 15 U.S.C. § 1117(c).

46.      Kevin's counterfeiting renders this case exceptional and intentional, entitling Spyderco to, among other things, an award of attorneys' fees under 15 U.S.C. § 1117(a).

47.      Spyderco is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## VI.     THIRD CLAIM FOR RELIEF
### (Violation of the C.C.P.A., Colo. Rev. Stat. § 6-1-101)

48.      Spyderco incorporates paragraphs 1 through 47 as though fully set forth herein.

49.      Through the acts complained of herein, Kevin has violated at least sections (a)-(e) of Colo. Rev. Stat. § 6-1-105 and thus engaged in unfair and deceptive trade practices.

50.      These acts occurred during and as part of Kevin's actual and continuing business.

51.      The complained of acts significantly impact the public who purchased the Counterfeit Knives in that they or those acquiring the products from them acquired inferior products under false pretenses that could cause grave bodily harm to those individuals or others. While the total number of consumers who may be affected by the inferior Counterfeit Knives may

be low when compared to the total number of authentic Spyderco knives that have been sold, the damage that could be caused by a failure of a Counterfeit Knife could be very significant (perhaps including death), and this is the type of impact for which the C.C.P.A. was designed to address.

52.     Spyderco has suffered actual and reputational injury due to Kevin's fraudulent and deceitful conduct as outlined herein, and Kevin has intentionally and willfully caused that injury.

53.     Spyderco is entitled to injunctive relief and monitory relief on this claim in the form of treble actual damages and corrective advertising dollars, an award of fees and costs and an award of prejudgment interest.

## VII.   FOURTH CLAIM FOR RELIEF
### (Commercial Disparagement)

54.     Spyderco incorporates paragraphs 1 through 53 as though fully set forth herein.

55.     The false statements etched into the Counterfeit Knives, along with counterfeiting of the MARKS and infringement of the Common-Law trademarks, constitute actionable willful and wanton commercial disparagement: (1) the steel designation and place of manufacture statements are literally false; (2) these statements have been and are continuing to be published to customers and potential Kevin customers; (3) Kevin's Counterfeit Knives are inferior to authentic Spyderco Military and Para-Military knives and as such their sale by Kevin and use by Kevin's customers and others is derogatory to (i.e. detract from or diminish) Spyderco's business in general, Spyderco's rights in and thus title to its registered and Common-Law Trademarks and to the quality of products sold under those Trademarks, as well as to the quality of Spyderco's reputation, generally; (4) by use of "CLONE" on the Counterfeit Knives themselves and the POS system, Kevin shows it intended to cause harm to Spyderco's pecuniary interest (in the form of diverted sales) and  recognized or should have recognized that it was likely to diminish Spyderco's

pecuniary interests; (5) Kevin had actual malice (i.e. intent, without just cause or reason, to commit a wrongful act that will result in harm) when it chose to advertise and sell the Counterfeit Knives, knowing they were not authentic Spyderco products, but which were marked with Spyderco's Common-Law and registered Trademarks; (6) thus, causing special damages in the form of lost profits on the sale of authentic Spyderco Military and Para-Military knives.

56.     Because of Kevin's wrongful conduct, Spyderco has suffered significant injury.

57.     As a direct result of Kevin's actions, Spyderco has been and will continue to be irreparably injured because it no longer has complete control of its reputation and the goodwill that has been painstakingly developed in the products and the federally registered and Common-Law Trademarks.  Spyderco will be forced to correct confusion in the marketplace resulting from Kevin's counterfeiting, even after injunctive relief is granted.

58.     Kevin's counterfeiting is causing Spyderco damages in amounts to be proven at trial.

## VIII.   FIFTH CLAIM FOR RELIEF
### (Misappropriation of Business Value)

59.     Spyderco incorporates paragraphs 1 through 58 as though fully set forth herein.

60.     Spyderco has expended significant resources, including skill, time, effort, and money, in acquiring and developing the federally registered and Common-Law Trademarks and the goodwill associated therewith.

61.     Spyderco has acquired substantial business values in the federally registered and Common-Law Trademarks, which are under Colorado law a protectable business value of Spyderco.

62.     Through its blatant counterfeiting of the federally registered and Common-Law Trademarks and products, Kevin has wrongfully appropriated the skill, time, effort, and money that Spyderco has invested in its products and the federally registered and Common-Law Trademarks and the goodwill associated therewith.

63.     Because of Kevin's wrongful conduct, Spyderco has suffered significant injury.

64.     As a direct result of Kevin's actions, Spyderco has been and will continue to be irreparably injured because it no longer has complete control of its reputation and the goodwill that has been painstakingly developed in the products and the federally registered and Common-Law Trademarks.  Spyderco will be forced to correct confusion in the marketplace resulting from Kevin's counterfeiting, even after injunctive relief is granted.

65.     Kevin's counterfeiting is causing Spyderco damages in amounts to be proven at trial.

## IX.     SIXTH CLAIM FOR RELIEF
### (Common Law Civil Conspiracy)

66.     Spyderco incorporates paragraphs 1 through 65 as though fully set forth herein.

67.     Kevin conspired with its employees, officers and directors and with the individual or entity from which it acquired the Counterfeit Knives to resale the Counterfeit Knives at a significant profit.

68.     At least two of those individuals and/or entities agreed to that course of conduct, through the programing of the POS system, placement of the tags upon the Counterfeit Knives and the subsequent advertising and sale of the Counterfeit Knives.

69.     Kevin and its co-conspirators actions have caused damage to Spyderco, as outlined herein.

## X.   SEVENTH CLAIM FOR RELIEF
### (Punitive Damages, Colo Rev. Stat. § 13-21-102 )

70.     Spyderco incorporates paragraphs 1 through 69 as though fully set forth herein.

71.     Pursuant to Colorado statute, when compensatory damages are assessed by the jury, the jury may, in addition, award reasonable exemplary damages against a defendant when it finds that the plaintiff's injury "is attended by circumstances of fraud, malice, or willful and wanton conduct." When awarded, exemplary damages are intended to punish a wrongdoer and to set an example for others, not to compensate the victim for the harm done to him or her.

72.     Kevin has here acted with malice, willfully, wantonly and fraudulently. Accordingly, Spyderco is entitled to an award of punitive damages

## XI.   PRAYER FOR RELIEF

WHEREFORE, Spyderco prays that the Court enter an Order for Judgment as follows:

A.     That Kevin has willfully counterfeited the MARKS;

B.     That Kevin has willfully infringed the MARKS and Common-Law Trademarks;

C.      That Kevin, and its respective agents, servants, officers, directors, employees and all persons acting in concert with it, directly or indirectly, be permanently enjoined from counterfeiting, infringing, inducing others to counterfeit, infringe or contribute to the counterfeiting or infringement of the MARKS and Common-Law Trademarks;

D.     That Kevin, and its respective agents, servants, officers, directors, employees and all persons acting in concert with it, directly or indirectly, be ordered to deliver up to Spyderco for destruction, or certify destruction of, all products that counterfeit and/or infringe the MARKS and Common-Law Trademarks;

E.     That Kevin account for and pay to Spyderco damages adequate to compensate Spyderco for Kevin's conduct, in an amount to be proven at trial, together with interest and costs as fixed by the Court;

F.     That Kevin pay to Spyderco statutory damages to the full extent permitted by law;

G.     That Spyderco be awarded its costs and attorneys' fees in accordance with 15 U.S.C. § 1117(a) and Colo. Rev. Stat. § 6-1-113 and any other appropriate statute or on the Court's own power;

H.     That Spyderco be awarded pre-judgment and post-judgment interest; and

I.     That the Court award such other and further preliminary and permanent relief to Spyderco as the Court deems equitable and appropriate.

## XII.   <u>JURY DEMAND</u>

Spyderco hereby demands a jury trial on issues so triable.

Respectfully submitted,

Dated: December 14, 2016          By:   s/ Robert R. Brunelli
                                        Robert R. Brunelli
                                        rbrunelli@sheridanross.com
                                        SHERIDAN ROSS P.C.
                                        1560 Broadway, Suite 1200
                                        Denver, CO 80202
                                        Telephone: (303) 863-9700
                                        Facsimile:  (303) 863-0223
                                        Email: litigation@sheridanross.com

                                        ATTORNEY FOR PLAINTIFF
                                        SPYDERCO, INC.